UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LISA BOBBIT,

Plaintiff,

vs.

COMPLAINT AND
JURY DEMAND

CORRECTIONAL OFFICER MONICA MARZAN; CORRECTIONAL SERGEANT J. CONFORTI; CORRECTIONAL OFFICER "FNU" (first name unknown) ROMAN; CORRECTIONAL LIEUTENANT SANDRA HANN; NEW YORK STATE POLICE TROOPER "FNU" MURTHA; NEW YORK STATE POLICE TROOPER WITH SHIELD NO. 3533; NEW YORK STATE POLICE INVESTIGATOR "FNU" DALEY; JOHN DOES, and RICHARD ROES,

Defendants.
------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff LISA BOBBIT seeks relief for the defendants' violation of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its First, Fourth and Fourteenth Amendments, and by the laws and Constitution of the State of New York. The Plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2. This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this

being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3. The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

**JURY TRIAL DEMANDED**

4. Plaintiff demands a trial by jury on each and every claim as pleaded herein.

**VENUE**

5. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

**PARTIES**

6. Plaintiff LISA BOBBIT is a citizen and resident of the United States, and at all times relevant herein was a resident of the State of New York. Plaintiff is African-American.

7. Defendants CORRECTIONAL OFFICER MONICA MARZAN, CORRECTIONAL SERGEANT J. CONFORTI, CORRECTIONAL OFFICER "FNU" ROMAN, CORRECTIONAL LIEUTENANT SANDRA HANN, NEW YORK STATE POLICE TROOPER "FNU" MURTHA, NEW YORK STATE POLICE TROOPER WITH SHIELD NO. 3533, NEW YORK STATE POLICE INVESTIGATOR "FNU" DALEY, and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the State of New York and/or the New York State Department of Corrections and Community Supervision (DOCCS) and/or New York State Police, an agency of the State of New York. Said individual defendants are and were at all times relevant herein acting under color of

state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant the State of New York, were acting for, and on behalf of, and with the power and authority vested in him by the State of New York and/or DOCCS and/or the New York State Police, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants Defendants CORRECTIONAL OFFICER MONICA MARZAN, CORRECTIONAL SERGEANT J. CONFORTI, CORRECTIONAL OFFICER "FNU" ROMAN, CORRECTIONAL LIEUTENANT SANDRA HANN, NEW YORK STATE POLICE TROOPER "FNU" MURTHA, NEW YORK STATE POLICE TROOPER WITH SHIELD NO. 3533, NEW YORK STATE POLICE INVESTIGATOR "FNU" DALEY, and JOHN DOES are sued individually.

8. Defendants CORRECTIONAL SERGEANT J. CONFORTI, CORRECTIONAL LIEUTENANT SANDRA HANN, NEW YORK STATE POLICE INVESTIGATOR "FNU" DALEY and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of the State of New York and/or DOCCS and/or the New York State Police, responsible for the training, retention, supervision, discipline and control of correction officers under their command. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of the State of New York, were acting for, and on behalf of, and with the power and authority vested in them by the State of New York and/or DOCCS and/or the New York State Police, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants CORRECTIONAL OFFICER MONICA MARZAN,

CORRECTIONAL SERGEANT J. CONFORTI, CORRECTIONAL OFFICER "FNU" ROMAN, CORRECTIONAL LIEUTENANT SANDRA HANN, NEW YORK STATE POLICE TROOPER "FNU" MURTHA, NEW YORK STATE POLICE TROOPER WITH SHIELD NO. 3533, NEW YORK STATE POLICE INVESTIGATOR "FNU" DALEY, and RICHARD ROES are sued individually.

**STATEMENT OF FACTS**

9. On March 20, 2015, approximately 7:00 a.m., Plaintiff LISA BOBBIT entered the initial security screening area at the Green Haven Correctional Facility in Stormville, NY.

10. Plaintiff was there to visit her brother, who was an inmate confined therein.

11. As Plaintiff was going through the security protocols, Defendant CORRECTIONAL LIEUTENANT SANDRA HANN nastily accosted Plaintiff because she deemed Plaintiff's shirt to be overly transparent.

12. Plaintiff told LIEUTENANT HANN that she would keep her jacket zipped up over her shirt during the duration of her visit at the prison.

13. LIEUTENANT HANN instructed Plaintiff to be sure to keep her jacket zipped up, and nodded at a JOHN DOE Correctional Officer, on information and belief Defendant CORRECTIONAL OFFICER MONICA MARZAN.

14. CORRECTIONAL OFFICER MONICA MARZAN then took Plaintiff to the side, and gave Plaintiff an ION test.

15. During this test, Plaintiff was asked by CORRECTIONAL OFFICER MONICA MARZAN what Plaintiff had in her pocket.

16. Plaintiff responded that she had her prescription seizure medication (which was a Lamotrigine pill), and her prescription pain medication (two ampules containing Tramadol in gel form in between a folded slice of bread, as it is taken with food, and Plaintiff puts it on the bread for ingestion) in Plaintiff's pocket.

17. Plaintiff also explained that she had inadvertently left it in her pocket, and that the bread was used for effective ingestion of the medication, and that taking the medication without food would cause dizziness, nausea, and other ill effects.

18. Plaintiff requested that Defendant MARZAN allow her to consume the food and medication prior to entering the facility.

19. Plaintiff was denied her request, and Defendant MARZAN confiscated Plaintiff's prescription medication.

20. Plaintiff tried in vain to show Defendant MARZAN her medical wristband, but Defendant MARZAN was unmoved.

21. Plaintiff's epilepsy and her severe sciatic pain are both chronic illnesses for which she needs to take these medications daily.

22. Plaintiff stood up and her seizure medicine, which had previously fallen unbeknownst to her onto her shirt when she took the bread and Tramadol out of her pocket, fell down.

23. LIEUTENANT HANN then said, in sum and substance, "oh, you have pills too" in a loud voice, and Plaintiff explained that that was her seizure medicine.

24. LIEUTENANT HANN then said, in sum and substance, "well seize, medical attention is a phone call away."

25. Plaintiff, both stunned and offended at this callous remark, responded by telling

LIEUTENANT HANN that she should not take seizures lightly, and that many people had suffered serious injuries, heart attacks, strokes, paralysis, and even death as a result of seizures.

26. LIEUTENANT HANN just rolled her eyes.

27. LIEUTENANT HANN asked if Plaintiff consented to a strip search.

28. Plaintiff asked why, but LIEUTENANT HANN did not give a reason, and told Plaintiff to sit down, and Plaintiff sat down.

29. LIEUTENANT HANN then smirked and told a male JOHN DOE Correctional Officer, in sum and substance, to watch Plaintiff carefully.

30. Plaintiff was pat-frisked by the male JOHN DOE Correctional Officer, who possibly was Defendant ROMAN.

31. Being pat-frisked by the male officer made Plaintiff feel violated.

32. Plaintiff sat there for 3 or 4 hours as LIEUTENANT HANN walked back and forth making snide remarks to Plaintiff.

33. Plaintiff tried a number of times to ask what was happening, but her questions were ignored.

34. Plaintiff's medication was not returned to her.

35. Plaintiff, having been recently diagnosed with spinal stenosis and sciatica, was unable to sit down for long periods of time, so she kept standing up in order to stretch her legs.

36. Plaintiff's legs were beginning to twitch because she was now off schedule of the prescribed medication that she should have taken, and which had been confiscated from her by Defendants MARZAN and HANN.

37. When Plaintiff stood up LIEUTENANT HANN said, mockingly, in sum and

substance, "no seizure yet, I see".

38. Around 11:00 a.m. CORRECTIONAL SERGEANT J. CONFORTI arrived, and asked Plaintiff about her medications that had been seized by Defendants MARZAN and HANN.

39. SERGEANT CONFORTI left briefly, and then returned and escorted Plaintiff back to an initial visitor's sign in area.

40. Waiting there was NEW YORK STATE TROOPER MURTHA and NEW YORK STATE POLICE INVESTIGATOR DALEY, who were standing beside LIEUTENANT HANN.

41. NEW YORK STATE TROOPER MURTHA searched Plaintiff in a manner that was inappropriate for a male search of a female arrestee (he placed his hand on both of Plaintiff's breasts, then felt around with both hands inside the waistband of Plaintiff's pants), and handcuffed Plaintiff.

42. Plaintiff was taken to a New York State Police station, where she was handcuffed to a bench.

43. Plaintiff felt light-headed and nauseous since she had not taken her medication.

44. Upon arrival at the station Plaintiff asked if she could use the bathroom (she had not used a bathroom for over 7 hours at that point, having come up to Green Haven that morning from New York City).

45. Plaintiff was kept seated and handcuffed to a chair for another approximately 45 to 55 minutes thereafter, and was told she could not use the bathroom until after she had been processed (which included being fingerprinted, photographed, and a background check conducted).

46. Upon clearing the background check Plaintiff was led to a bathroom by a female JOHN DOE Officer who informed Plaintiff that she was taking Plaintiff to the bathroom because she had to search Plaintiff again.

47. Plaintiff was subjected to an unlawful strip search by the female JOHN DOE Officer.

48. The female JOHN DOE Officer told Plaintiff to stay calm saying, in sum and substance, "I don't want you to get sick".

49. At approximately 3:00 or 4:00 p.m. after being informed by STATE POLICE INVESTIGATOR DALEY that he has spoken with an Assistant District Attorney, Plaintiff was released from custody with two Desk Appearance Tickets (DATs), one for alleged violation of Public Health Law § 3345, Possession of Controlled Substances by Ultimate Users Original Container, and one for alleged violation of Penal Law § 205.20(1), Promoting Prison Contraband in the Second Degree.

50. The DATs are electronically signed illegibly by NEW YORK STATE POLICE TROOPER WITH SHIELD NO. 3533 (who may be NEW YORK STATE POLICE TROOPER "FNU" MURTHA).

51. A Supporting Deposition was handwritten and executed by CORRECTIONAL OFFICER MONICA MARZAN, which falsely alleged that the following occurred while Defendant MARZAN conducting the Ion scan on Plaintiff:

> I Officer M. Marzan observed a large bulge pertruding from her [Plaintiff's] left sock. I directed Ms. Bobbitt to remove the unknown item that she was consealing from her sock when she stated to me "what do you want, this is my breakfast." Upon inspecting the item I observed it to be a piece of bread containing 2 clear plastic vials containing an unknown liquid substance. I then directed Ms. Bobbitt to have a seat at which point she started to tuck her shirt into her pants and dropped a round white pill with the imprint J 248 on it. I confiscated all of the items and turned them over to Sgt. J. Conforti.
> As per NYS departmental directive all prescribed medication must be in its original labeled container and surrendered upon the visitors processing procedure.

52. These allegations are lies.

53. Plaintiff had nothing at all in her sock, at any point. As described above, Plaintiff had a Lamotrigine pill, along with two ampules containing Tromidol in between a folded slice of bread, in her pocket.

54. Plaintiff also did not drop her pill. It fell, as described above.

55. A memo from CORRECTIONAL SERGEANT J. CONFORTI states that CORRECTIONAL OFFICER "FNU" ROMAN photographed Plaintiff's prescription medicine (which is described as "contraband"), and that Plaintiff's medicine was turned over to STATE POLICE INVESTIGATOR DALEY.

56. On information and belief, CORRECTIONAL SERGEANT J. CONFORTI took responsibility for the decision to arrest Plaintiff and hold her in custody, and to call the New York State Police to further take her into custody. On a DOCCS unusual incident report, under his name, it states "visitor arrest" in a column denoted "specific incident."

57. On information and belief, Plaintiff's arrest was also approved by CORRECTIONAL LIEUTENANT HANN.

58. Upon her release from custody STATE POLICE INVESTIGATOR DALEY gave Plaintiff a letter from the prison stating that her visits were suspended for 7 days from 3/20/15 through 3/27/15.

59. Plaintiff was able to visit her brother on March 28, 2015, after the seven day suspension.

60. When Plaintiff returned on Friday, April 3, 2015, however, she was told after registering that her visitation privileges had been suspended and that she would receive a letter in the mail letting her know when her suspension would be lifted.

61. As a result of her arrest on March 20, 2015 and Defendants' false allegations against her, Plaintiff's visiting privileges at all DOCCS facilities were indefinitely suspended.

62. Following Plaintiff's administrative appeal of her indefinite suspension, the suspension was modified to an 18 month suspension.

63. Plaintiff is still pursuing a further administrative appeal mechanism to seek to have her visiting privileges be reinstated.

64. Plaintiff has not been able to see her brother since March 28, 2015.

65. The Desk Appearance Ticket charges against Plaintiff have been dismissed in their entirety by way of an Adjournment in Contemplation of Dismissal.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

66. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67. By their conduct and actions in assaulting and battering, inflicting emotional distress upon, violating and retaliating for the exercise of free speech and association of, strip searching, violating the rights to equal protection of, abusing process against, violating the rights to due process of, fabricating evidence against, depriving plaintiff of her medication, failing to address the medical needs of, denying plaintiff of access to a bathroom, covering up the misconduct of themselves and their colleagues, and failing to intervene to prevent the harm to, the Plaintiff, Defendants CORRECTIONAL OFFICER MONICA MARZAN, CORRECTIONAL SERGEANT J. CONFORTI, CORRECTIONAL OFFICER "FNU" ROMAN, CORRECTIONAL LIEUTENANT SANDRA HANN, NEW YORK STATE POLICE

TROOPER "FNU" MURTHA, NEW YORK STATE POLICE TROOPER WITH SHIELD NO. 3533, NEW YORK STATE POLICE INVESTIGATOR "FNU" DALEY, and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth and Fourteenth amendments.

68. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**SECOND CLAIM**

**SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

69. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70. By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers CORRECTIONAL OFFICER MONICA MARZAN, CORRECTIONAL SERGEANT J. CONFORTI, CORRECTIONAL OFFICER "FNU" ROMAN, CORRECTIONAL LIEUTENANT SANDRA HANN, NEW YORK STATE POLICE TROOPER "FNU" (first name unknown) MURTHA, NEW YORK STATE POLICE TROOPER WITH SHIELD NO. 3533, NEW YORK STATE POLICE INVESTIGATOR "FNU" (first name unknown) DALEY,

and RICHARD ROES caused damage and injury in violation of Plaintiff's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Eighth and Fourteenth amendments.

71. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured

**THIRD CLAIM**

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)**

**AND SECTION 504 OF THE REHABILITATION ACT**

72. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

73. Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

74. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency …."

75. The ADA provides that the "remedies, procedures, and rights" of Section 504 "shall be the remedies procedures, and rights" provided to plaintiffs under the ADA. 42 U.S.C. §

12133.

76. Plaintiff was and is a "qualified individual," with a physical disability that substantially limited her physical abilities.

77. The State of New York, DOCCS and the New York State Police were and are entities that must comply with Section 504 and the ADA.

78. Defendants were and are individuals who are employed by, associated with or otherwise acting as authorized representatives or agents of the State of New York, DOCCS and the New York State Police.

79. At all times herein mentioned, the above-named defendants, and each of them, were the agents, representatives, principals and/or employees of the State of New York, DOCCS and the New York State Police and, in doing the things alleged herein, were acting within the course and scope of said agency or employment.

80. The State of New York, DOCCS and the New York State Police receive federal financial assistance.

81. Defendants knew or should have known that plaintiff was disabled.

82. Defendants subjected plaintiff to discrimination on the basis of her physical handicaps.

83. Defendants arrested plaintiff because of legal conduct related to her disabilities.

84. In arresting plaintiff, defendants failed to reasonably accommodate plaintiff's disabilities

85. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and

expenses, and was otherwise damaged and injured

**FOURTH CLAIM**

**ASSAULT AND BATTERY**

86. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

87. By the actions described above, defendants did inflict assault and battery upon the plaintiff. The acts and conduct of defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

88. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured

**FIFTH CLAIM**

**FALSE ARREST AND FALSE IMPRISONMENT**

89. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

90. By the actions described above, defendants caused plaintiff to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

91. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific

and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured

**SIXTH CLAIM**

**ABUSE OF PROCESS**

92. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

93. By the conduct and actions described above, defendants employed regularly issued process against Plaintiff, compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm Plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to Plaintiff which was outside the legitimate ends of the process. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

94. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured

**SEVENTH CLAIM**

**TRESPASS**

95. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

96. The defendants willfully, wrongfully and unlawfully trespassed upon the person

of plaintiff.

97. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured

**EIGHTH CLAIM**

**CONVERSION**

98. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

99. The defendants willfully, wrongfully and unlawfully converted plaintiff's property.

100. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured

**NINTH CLAIM**

**INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

101. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

102. By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused severe emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New

York.

103. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured

**TENTH CLAIM**

**NEGLIGENCE**

104. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

105. The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

106. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured

**ELEVENTH CLAIM**

**CONSTITUTIONAL TORT**

107. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

108. Defendants, acting under color of law, violated plaintiff's rights pursuant to Article I, §§ 6, 8, 11 and 12 of the New York State Constitution.

109. A damages remedy here is necessary to effectuate the purposes of §§ 6, 8, 11, and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

110. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, Plaintiff demands the following relief jointly and severally against all of the defendants:

a. Compensatory damages;

b. Punitive damages;

c. A declaratory judgment;

d. The convening and empanelling of a jury to consider the merits of the claims herein;

e. Costs and interest and attorney's fees;

f. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
March 19, 2016

_/S/ Jeffrey A. Rothman________
JEFFREY A. ROTHMAN, Esq.
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980
Attorney for Plaintiff